## A99A1603. TYSON v. THE STATE.
### (526 SE2d 603)

BLACKBURN, Presiding Judge.

After a jury trial, Samuel Seymore Tyson appeals his conviction of child molestation. Tyson contends that the trial court erred by (1) denying his motion to suppress, (2) allowing the introduction of sexually explicit material as similar transaction evidence, (3) denying his motion in limine, (4) allowing testimony regarding the contents of a missing videotape, and (5) allowing hearsay testimony. Tyson also contends that the arresting officers failed to provide him with his *Miranda* warnings. For the reasons set forth below, we reverse.

Viewing the evidence in the light most favorable to the verdict, it reveals that Tyson operated a booth at an Acworth flea market. Tyson is a 47-year-old individual with a third or fourth grade education, who can read very little and can barely sign his name. On the day of the incident, Officer Steven Eidson was patrolling the flea market when he was flagged down by Mr. and Mrs. Glenn who reported that they had seen an individual molesting a young girl. Officer Eidson contacted his supervisor, Sergeant Mitchell, who met him at the flea market. They then proceeded to look for the described individual. The Glenns pointed out Tyson as the molester.

The officers approached Tyson and advised him of the allegations, which he denied. Tyson also denied knowledge of the child or her mother. This interrogation took place outside Tyson's booth. Officer Eidson stated that "since we had no victim in an apparent crime, we started to leave at that point." As the officers were leaving, they were flagged down by Sosebee, another witness. At the motion to suppress hearing, Officer Eidson testified that Sosebee had related her observations to him and they were similar to the Glenns' description of the incident. At trial, the State was not permitted to go into what Sosebee had said to Officer Eidson as she had suffered a stroke and was not competent to testify. The State did not attempt to make a showing which might have permitted such testimony.

Officer Eidson testified that after Sosebee had talked to them, the officers returned to question Tyson further. Tyson continued to deny any knowledge of the girl or her mother. Officer Eidson testified

that he asked Tyson if he had anything illegal, such as weapons, in the van, which was parked within ten feet of the booth, and if Tyson had any problem with him looking in the van. The back door of the van was open, and the officer could clearly see into the rear section of the van, and the front section was visible through the window. Tyson denied possession of any weapons and consented to the officers' request to look in his van.

Upon entering the van, Officer Eidson found a .22 Derringer handgun, a .22 rifle and a third weapon. At this time, he also found a plastic grocery bag in which he discovered several used pairs of latex gloves and a small bag which contained several pairs of yellow colored panties. Next to the bag, Officer Eidson found a box of unused latex gloves and a jar of Vaseline. The van also contained a mattress and a TV and VCR setup. Tyson stated that he had forgotten that he had weapons in the van, and he said that he could not believe this was happening to him because he had also been similarly accused at another flea market. The officers did not seize any items or arrest Tyson at that time because they did not feel they had probable cause and they still had not located a victim. Tyson was however given a citation for no proof of insurance.

Officer Eidson returned to the police station where he discussed the matter with Sergeant Atkinson, the detective on call, who informed him that he should have arrested Tyson. By this time, Officer Eidson had been able to track down the victim's mother and spoke to her over the telephone. The mother initially denied having been at the flea market, then she admitted that she was at the flea market, but denied that she left the child with Tyson. The child's grandfather called and stated he was bringing the mother and daughter to the station to talk to the police. The child did not testify at trial as she would not respond to the oath. The mother died before trial and did not testify.

After talking to Sergeant Atkinson, Officer Eidson returned to the flea market where he arrested Tyson and seized Tyson's van as evidence. Sergeant Atkinson testified that during a subsequent inventory search of the seized van, he found pornographic material which included videotapes, one of which involved bestiality, adult magazines, a blowup doll with pigtails, soiled panties, two dildos, used condoms, and pictures of naked female children pinned to a piece of cardboard. After Tyson was arrested, Officer Eidson obtained an arrest warrant from a magistrate.

At trial, Mrs. Glenn testified that she had seen Tyson rubbing his hand up and down between a child's legs on her vaginal area while she was sitting on his lap. She stated that the victim had pushed away from Tyson, but he had tried to pull her back into his lap. Mr. Glenn testified that he saw Tyson struggling with a child as

she was trying to pull away, and Tyson pulled her back onto his lap with her buttocks right on top of his lap. Mr. Glenn described Tyson's action as "hunching" on the child like a dog. Both Mr. and Mrs. Glenn testified that after the child pulled away, they could see that Tyson had an erection. Tyson testified that the child did sit on his lap, but he denied molesting her.

1. Tyson contends that the trial court erred in denying his motion to suppress the evidence found in his van because the van was illegally searched, arguing that the search of the van was not incident to a legal arrest. We agree that the second search of the van was incident to an illegal arrest.

> In reviewing a trial court's denial of a motion to suppress, we are required to accept such court's ruling on disputed facts unless it is clearly erroneous, [and] we must defer to the trial court's judgment on the credibility of witnesses. Furthermore, the evidence is to be construed most favorably to the upholding of the findings and judgment made.

(Citations and punctuation omitted.) *Cates v. State*, 232 Ga. App. 262, 263 (501 SE2d 262) (1998).

(a) Both the Georgia courts and the federal courts have expressed a preference for arrests pursuant to a warrant. Ga. Crim. Trial Prac. (1998 ed.), § 2-13. OCGA § 17-4-20 (a) contains the circumstances under which a warrantless arrest may be made, including when an offense is committed within the officer's presence, within his immediate knowledge, when the offender is endeavoring to escape, or if for other cause there is likely to be a failure of justice for want of a judicial officer to issue a warrant. The facts of the present case fail to support a valid arrest because, at the time of the arrest, the officer lacked probable cause.

This is especially true in light of the officer's own testimony that he had no probable cause to arrest Tyson when he returned to the police station. The evidence clearly shows that the officer had the time to obtain an arrest warrant prior to his return to the flea market and arrest of Tyson. There was no victim or physical evidence of a crime. No crime was committed in the presence of the officer, and Tyson was not attempting to elude the officer. Tyson was still at his booth when the officer returned to arrest Tyson. Having improperly failed to obtain a warrant, Tyson's arrest without probable cause was invalid. Therefore, the search of the van was not incident to a valid arrest and was improper. The *evidence* obtained in the illegal search should have been suppressed. See *Harper v. State*, 135 Ga. App. 924, 925 (219 SE2d 636) (1975). Also, much of this evidence is not admissible under *Simpson v. State*, 271 Ga. 772 (523 SE2d 320) (1999).

The special concurrence would find probable cause when a witness tells the officer he has seen a crime committed — even though the witness' statements were not corroborated in any fashion and there was no physical evidence of a crime.

Tyson's presentation of exculpatory evidence by his denial of the acts of molestation created a credibility issue with the State's inculpatory evidence. Such an issue must be decided by a jury. See *Higginbotham v. State*, 207 Ga. App. 424, 427 (4) (428 SE2d 592) (1993). Therefore, the evidence of Tyson's guilt was not so overwhelming that we can find that the admission of the sexually explicit evidence was harmless. "It cannot be said with any degree of certainty that the erroneous admission of [such] evidence did not have any prejudicial effect on the jury's determination as to [Tyson's] credibility and, consequently, on the jury's determination as to his guilt." Id. See also *Ricks v. State*, 217 Ga. App. 666, 667 (1) (458 SE2d 862) (1995); *White v. State*, 213 Ga. App. 429, 431 (1) (445 SE2d 309) (1994). Therefore, a new trial is required on this ground.

(b) Tyson argues, on appeal, that his warrantless arrest requires the quashing of the subsequent arrest warrant and requires the dismissal of the indictment against him. However, as these motions were not made in the trial court, they cannot be considered for the first time on appeal. See *Hill v. State*, 224 Ga. App. 208, 209 (2) (480 SE2d 256) (1997) (issues raised on appeal for the first time present nothing for review). Moreover, the illegality of an arrest does not bar prosecution or conviction. *Thompson v. State*, 175 Ga. App. 645, 648 (3) (334 SE2d 312) (1985).

2. Tyson contends that the trial court erred in allowing the introduction of sexually explicit material as similar transaction evidence. The evidence complained of in this enumeration is the evidence improperly seized from the van and discussed in Division 1. The trial court allowed the subject material into evidence to show the lustful disposition of the defendant.

Our Supreme Court has recently addressed this unsettled issue and greatly limited the admissibility of sexual paraphernalia found in a defendant's possession. It is clear that much of the State's evidence in this case is barred under *Simpson*, supra.

> Because the case law has been unclear and unsettled, we take this opportunity to put forth a clear and cogent rule: In a prosecution for a sexual offense, evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity. Under this rule, sexually explicit material cannot be introduced merely to show a defendant's

> interest in sexual activity. It can only be admitted if it can be linked to the crime charged.

*Simpson*, supra at 773.

We are precluded under the circumstances of this case from applying the harmless error rule and must reverse on this ground. *Frazier v. State*, 241 Ga. App. 125 (524 SE2d 768) (1999). The State offered no physical evidence that Tyson committed the crime charged. The child denied the incident in police interviews and did not testify at trial. We note that we can find nothing in the record which establishes the fact that the subject child was indeed the child about whom the witnesses testified.

3. Tyson contends that the trial court erred by denying his motion in limine to exclude his statement to Officer Eidson that he had previously been accused of molestation at another flea market. However, Tyson's spontaneous statement was neither custodial nor in response to police questioning. Therefore, the trial court's findings are supported by testimony and must be affirmed. See *Sampson v. State*, 209 Ga. App. 213, 216 (2) (433 SE2d 136) (1993); see also *Cates*, supra.

4. Tyson argues that the trial court erred by allowing testimony regarding the contents of a bestiality videotape that was obtained during the search of his van and subsequently lost by the police. As we previously held that all of the evidence found in Tyson's van should have been suppressed, see Division 1, and especially such evidence that does not relate to the crime charged, see Division 2, citing *Simpson*, supra, this error is rendered moot.

5. Tyson contends that the trial court erred by allowing hearsay testimony.

Officer Eidson testified that when the victim was being interviewed at the police station, the victim's mother was influencing the victim's negative responses when the victim was asked whether Tyson had molested her. Officer Eidson took the mother into the hallway to explain that she could not guide the victim's answers. He was allowed to testify at trial that the victim's mother told him that she did not want any information regarding this incident to get to the father because she was on probation, and if the father found out that she left the child alone with Tyson, the father would have her sent back to jail. Tyson's counsel objected on hearsay grounds. The State argues that because the mother is now deceased, the testimony was admissible under the necessity exception.

> The two prerequisites for the admission of hearsay because of necessity are: a finding that the hearsay is necessary, and a finding that the declarant's hearsay statement is sur-

rounded by particularized guarantees of trustworthiness. *Mallory v. State*, 261 Ga. 625 (2) (409 SE2d 839) (1991). [The Supreme Court of Georgia] recently held in *Chapel v. State*, 270 Ga. 151 (4) (510 SE2d 802) (1998), that the hearsay declarant's death or unavailability, in and of itself, does not satisfy the "necessary" component. . . . To satisfy the requirement that the hearsay be "necessary," in addition to showing the hearsay declarant's unavailability due to death, privilege, or other reason, the proponent of the hearsay must also show "that the statement is relevant to a material fact and that the statement is more probative on that material fact than other evidence that may be procured and offered."

(Citations omitted.) *Clark v. State*, 271 Ga. 6, 9-10 (5) (515 SE2d 155) (1999). In the present case, the evidence explained the mother's coaching of the victim and the victim's denial of the molestation. Additionally, the evidence showed the mother's state of mind and motivation instead of an attempt to prove the truth of the mother's statements. The mother and Officer Eidson were the only ones present during this conversation. " 'Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.' " *Dixon v. State*, 227 Ga. App. 533, 536 (4) (489 SE2d 532) (1997). The evidence showed particularized guarantees of trustworthiness because they were statements against the mother's interest. See OCGA § 24-3-8 (declarations against interest by one since deceased admissible). We cannot say that the trial court erred in allowing this testimony.

6. Finally, Tyson contends that the charges against him should be dismissed because he was never informed of his *Miranda* rights prior to his arrest. However, Tyson failed to assert this alleged error in the trial court, and therefore, it presents nothing for review. See *Hill*, supra.

*Judgment reversed. Ellington, J., concurs. Barnes, J., concurs specially.*

BARNES, Judge, concurring specially.

Although I agree that this case must be reversed and concur fully with Divisions 2, 3, 5, and 6 and the judgment, I cannot concur with Division 1 that holds that Tyson was the victim of an illegal arrest, or with Division 4 that holds that Tyson's claim that the trial court erred in allowing testimony about the contents of a lost videotape was moot based on its holding in Division 1. Although I concur with the reversal, I must note that the result reached by the majority would upon retrial necessarily preclude the introduction of all the evidence seized incident to Tyson's arrest.

In *Durden v. State*, 250 Ga. 325, 327 (297 SE2d 237) (1982), our Supreme Court abolished the distinction between the federal and state tests in determining whether an arrest was valid.

> We find that these dual inquiries, one under federal law and one under state law, serve no useful purpose and result in complicating the law in an area which needs to be readily understood by law enforcement officers. Hence we hold that if an officer, while in the presence or vicinity of the accused, acquires "probable cause" (federal) to arrest the accused outside his or her home, and fails to make such arrest, there is likely to be a failure of justice as a matter of law if the officer is required to delay the arrest until a warrant is obtained. That is to say, we find the state rule to be the same as the federal rule. An arrest and search, legal under federal law, are legal under state law.

Moreover, in *Bodiford v. State*, 169 Ga. App. 760-761 (315 SE2d 274) (1984), this court reiterated that " 'an arrest meeting the constitutional requirements of probable cause is valid whether or not OCGA § 17-4-20 was violated.' " (Citations and punctuation omitted.) Therefore, our inquiry should focus on whether probable cause existed for Tyson's arrest.

I am satisfied that the officer had probable cause to arrest Tyson. Two witnesses reported to the police officer that they saw a man molesting a young girl and then identified Tyson as the person who molested the child. Further, while the record is not clear what was said, a third witness also reported the incident to the police and apparently identified Tyson. In my opinion, this information was sufficient to give the officer probable cause to arrest Tyson. In effect, three witnesses reported to the police that they had just seen a man molesting a young girl and identified Tyson as the man who did it. What more evidence could be necessary?

An arrest without a warrant is constitutionally valid if the arresting officer knew facts and circumstances, based upon reasonably trustworthy information, that were sufficient for a prudent person to believe that the accused had committed an offense. *Wright v. State*, 189 Ga. App. 441, 443 (1) (375 SE2d 895) (1988). Additionally, this Court gives reports from concerned citizens a preferred status when testing the credibility of their information. *Whitten v. State*, 174 Ga. App. 867, 868 (1) (331 SE2d 912) (1985). Notwithstanding the weight the majority gives to the officer's opinion regarding whether he had probable cause to arrest Tyson, neither the trial court nor this Court is bound by the police officer's conclusions regarding his actions. See *Morgan v. State*, 195 Ga. App. 732, 734-735

(3) (394 SE2d 639) (1990).

Because there was probable cause to arrest Tyson, all of the evidence seized in the van should not be excluded. As a result, Tyson's claim that the trial court erred in allowing the police officers to testify about the contents of the lost videotape is not rendered moot. Under *Simpson v. State*, 271 Ga. 772 (523 SE2d 320) (1999), evidence of sexual paraphernalia found in the defendant's possession must show his lustful disposition or bent of mind toward engaging in the type of sexual activity with which he is charged before it is admissible. Because the sexually explicit videotape did not relate to child molestation, evidence as to its content is not, therefore, admissible. This does not mean, however, that other evidence, such as the nude photographs of young children, which was legitimately seized incident to a lawful arrest, must be excluded. See id.

DECIDED DECEMBER 3, 1999 — 

*Barnes, Browning, Tanksley & Casurella, George T. Smith*, for appellant.

*Patrick H. Head, District Attorney, Bruce D. Hornbuckle, Debra H. Bernes, John C. Richter, Assistant District Attorneys*, for appellee.